QUESTION: Pursuant to s. 550.17, F. S., must the party requesting the transfer of a pari-mutuel permit hold a referendum vote in the county to which the permit is being transferred?
SUMMARY: The statutory scheme provided in ss. 550.05, 550.06, 550.07, and 550.17, F. S., requires a referendum in Broward County if a party acquires a permit approved by the electors of Dade County prior to the conducting of any racing dates under the permit. Thus, any sale of the Hialeah Race Course permit to the Gulfstream Park Race Track must be approved by the electors of Broward County prior to the issuance of a license or the conducting of a racing meet. According to the facts in your letter, you state that the House of Representatives has passed H.B. 2537 [Ch. 76-179, Laws of Florida] which affects the referendum requirements of s. 550.17, F. S. Your inquiry is particularly premised upon the possible purchase of the Hialeah Race Course by the Gulfstream Park Race Track. If the transaction is completed, it is contemplated that the Hialeah permit and dates would be transferred to and conducted at Gulfstream Park Race Track. The Hialeah Race Course is located in Dade County and has been previously approved by elector referendum. The Gulfstream Park Race Track is located in Broward County and has been previously approved by elector referendum. By letter of October 29, 1974, I responded to a similar question regarding the transfer of Hialeah's racing dates to Gulfstream subsequent to the Gulfstream purchase of Hialeah Race Course. I concluded therein that the reassignment of Hialeah's dates to be conducted at Gulfstream was precluded by the previous assignment of dates by the Board of Business Regulation, the late date of the request, and the apparent lack of statutory authority for the board to approve the transfer for the reasons given. A pari-mutuel permit is issued to the racetrack by the Division of Pari-Mutuel Wagering, when applied for between June 1 and July 1 and then ratified or rejected by the electors of the county wherein the track will be operated. Sections 550.05 and 550.06, F. S. Upon electorate approval, the division is required to issue a license and to annually grant racing days which are to be conducted at the location fixed in the permit and ratified in the election. Section 550.07, F. S. The electorate of the county in which the racing has been ratified, licensed, and conducted may petition for an election to revoke the permit under the procedure provided in s. 550.18, F. S. See s. 550.19, F. S. An exception to the county referendum is the newly created summer thoroughbred horseracing season. Miami Beach Jockey Club, Inc. v. State ex rel. Willis,227 So.2d 96 (1 D.C.A. Fla., 1969). The clear legislative intent of the pari-mutuel system is to create a local county option authorizing or rejecting the operation of a racetrack within the county. This intent is clearly expressed in s. 550.17, F. S., which requires proof of the referendum election in the county wherein the racing meet will be conducted prior to issuance of the license. The conclusion that the transfer of a racing permit from Dade to Broward requires a referendum pursuant to ss. 550.05, 550.06, 550.07, and 550.17, F. S., does not include leasing arrangements under s. 550.47, F. S., upon which you have not inquired. In addition to Ch. 550, F. S., requiring a referendum upon a cross-county permit change, permits operative in Dade and Broward Counties have an absolute restriction in s. 550.05(2). This statute prohibits any referendum upon a permit issued to conduct horseracing. Thus, consideration should be given this provision in the passage of H.B. 2537.